IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| VS. | § | CRIMINAL NO. 07-93-1 |
| | § | |
| ERNESTO BALDERAS, | § | |
| | § | |
| Defendant/Movant. | § | |
| | § | |
| CIVIL ACTION H-010-268 | § | |

**MEMORANDUM AND OPINION**

Ernesto Balderas filed a motion under 28 U.S.C. § 2255, seeking to vacate his 2008 conviction and sentence. Balderas pleaded guilty to conspiracy to distribute cocaine and entered into a written plea agreement. As part of the agreement, Balderas waived his appellate and collateral-challenge rights. Balderas was sentenced to 262 months. He filed this motion to dismiss under § 2255 in January 2010. The government responded by moving to dismiss or in the alternative for summary judgment. (Docket Entry Nos. 476, 477, 478).[1] Balderas filed a reply. (Docket Entry No. 482). Based on the motion and response, the parties' submissions, the record, and the applicable law, this court denies Balderas's motion for relief and, by separate order, enters final judgment. The reasons are set out in detail below.

---

[1] The government includes in its motions a request to expand the record to include defense counsel's and appellate counsel's affidavit; that request is granted.

**I.     Background**

Count one of the six-count indictment charged Balderas with conspiracy to possess with intent to distribute five kilograms or more of cocaine from August 2005 until March 2007. Count four charged Balderas with conspiracy to commit money laundering during the same period; counts five and six charged him with two specific instances of aiding and abetting money laundering. Balderas was one of twelve defendants named in the indictment. His codefendants included other members of his family, including his wife and his brother-in-law, Juan Sanchez.

Balderas pleaded guilty to count one, conspiracy to distribute five kilograms or more of cocaine. At the rearraignment, the court first established that Balderas and his counsel had reviewed the indictment and the plea agreement and that Balderas was satisfied with the explanations he had received and with the representation his lawyer had provided. The court also explained to Balderas in detail the consequences of his plea. That explanation included the following exchange:

> THE COURT:   Under the statute the punishment for a conviction under this count can go as high as life and cannot be less than ten years. Do you understand that?
>
> DEFENDANT BALDERAS:   Yes.
>
> MR. LOONEY:   Your Honor, absent special circumstances being found in the presentence report is what I told him –
>
> THE COURT:   Well, okay, better back up.
>
> MR. LOONEY:   I just didn't want him to think that I had misled him.
>
> THE COURT:   Okay. Well, fair enough.
>
> There are circumstances in which a sentence of less than ten years might result, but there's no guarantee that that result is going to apply to you. So, what you need to understand is that the statute says that the range is a minimum ten, maximum life. Under some

> circumstances it can go below ten years, but there's no guarantee that those circumstances will apply to either of you. Do you understand that?
>
> DEFENDANT BALDERAS:  Yes.
>
> DEFENDANT SANCHEZ:  Yes.
>
> THE COURT:  There's also a fine of up to $4 million. Do you understand that?
>
> DEFENDANT BALDERAS:  Yes.
>
> DEFENDANT SANCHEZ:  Yes.
>
> THE COURT:  Worst possible circumstances, life and a $4 million fine. Okay?
>
> DEFENDANT BALDERAS:  Yes.
>
> DEFENDANT SANCHEZ:  Yes.
>
> THE COURT:  You understand that you are exposing yourself to that by pleading guilty?
>
> DEFENDANT BALDERAS:  Yes.
>
> DEFENDANT SANCHEZ:  Yes.

(Docket Entry No. 397, pp. 16-17).

The court specifically advised Balderas about the effect of the waiver of appellate and collateral-challenge rights in his plea agreement:

> THE COURT: . . . As part of your discussion of the plea agreements, did you and your lawyers talk about how the sentence in your case might be determined?
>
> DEFENDANT BALDERAS:  Yes.
>
> DEFENDANT SANCHEZ:  Yes.

THE COURT:   You understand that what the Court has to do is — that's me, I have to go through a presentence report that's prepared after an investigation and determine what guideline sentence applies and then determine where in the guideline range or where outside the guideline range the sentence in each of your cases ought to be put. Do you understand that I have to do that?

DEFENDANT BALDERAS:   In other words, you have the final decision?

THE COURT:   I have the final decision and the process that I use to reach that decision is to calculate the guideline sentence and — which will be a range usually, figure out what — and then figure out if the sentence you get ought to be within the guidelines and if so, where in the guideline range, or because the guidelines are only advisory, to figure out if it ought to be outside the range and if so, for how many years or months.  Do you understand the process?

DEFENDANT BALDERAS:   Yes.

DEFENDANT SANCHEZ:     Yes.

THE COURT:   And I tell you the process because you need to understand that a lot of different pieces of information and a lot of different factors go into figuring out what sentence applies.  You understand that?

DEFENDANT BALDERAS:   Yes.

DEFENDANT SANCHEZ:     Yes.

THE COURT:   And do you understand that today when you're figuring out whether or not to plead guilty, you don't know what sentence you're going to get?

DEFENDANT BALDERAS:   Yes.

DEFENDANT SANCHEZ:     Yes.

THE COURT:  You know what the statute says, ten years to life.

DEFENDANT BALDERAS:   Yes.

>THE COURT:  $4 million.  You don't know for sure what sentence you're going to receive.  Do you understand that?
>
>DEFENDANT BALDERAS:  Correct.
>
>DEFENDANT SANCHEZ:  Yes.
>
>THE COURT:  If it turns out that the sentence you get is heavier than you expect, you are stuck.  You can't withdraw your plea, and under this plea agreement you're giving up the right to file an appeal except on some very limited grounds, either a sentence that's higher than the statute — it's hard to do when the sentence calls for a maximum of life — or a sentence that's higher than the guidelines call for and the government hasn't asked me to go higher than the guidelines.  As long as I sentence you within the statute or within the guidelines or if the government asks me to go higher — and I don't think the government — have you obligated yourself not to make that request?
>
>MR. IMPERATO:  I will not be asking for an upward departure.
>
>THE COURT:  Okay.  As long as I sentence you within the guidelines or within the statute, you're stuck.  You can't get out of your plea, you can't file a later appeal, and you can't file a habeas petition or a later challenge.  Do you understand that?
>
>DEFENDANT BALDERAS:  Yes.

(*Id.*, pp. 19-22).

The court also advised Balderas that the information used at sentencing was not limited to the allegations in the indictment or what was proven beyond a reasonable doubt or admitted in court:

>THE COURT:  As I said earlier, I'm not limited to the information that the government has about you today.  There will be information developed in the presentence investigation and if that is sufficiently reliable and the law permits, I can rely on it even if you don't admit it's true and even if you — even it's not proven beyond a reasonable doubt and in some circumstances that too can make your sentence heavier.  Do you understand that?
>
>DEFENDANT BALDERAS:  Yes.

>    DEFENDANT SANCHEZ:   Yes.
>
>    THE COURT:   And if that happens, unless I go above the statute or the guidelines, you could not file an appeal or a later challenge. Do you understand that?
>
>    DEFENDANT BALDERAS:   Yes.
>
>    DEFENDANT SANCHEZ:   Yes.
>
>    THE COURT:   Or withdraw your plea. Do you understand that?
>
>    DEFENDANT BALDERAS:   Yes.

(*Id.*, pp. 22-23).

The court also advised Balderas that even with the plea agreement, the court was not obligated to limit itself to the sentence the government sought but could impose a heavier sentence:

>    THE COURT:   What you also need to understand, however, is that I'm not obligated to follow the government's recommendation. If I disagree and think you should get a more severe sentence than would result from what the government's approach would result in, I can do that. I don't have to limit myself to the sentence the government seeks. Do you understand that?
>
>    DEFENDANT BALDERAS:   Yes.
>
>    DEFENDANT SANCHEZ:   Yes.
>
>    THE COURT:   And what you also need to understand is that if I did that and you ended up getting a heavier sentence than the government asked for, that's not an upward departure. You still couldn't appeal, because it would still be within the guidelines because I'm the one who figures out the guidelines. Do you understand that?
>
>                              . . .
>
>    MR. LOONEY:   Before we move past that issue, Your Honor –
>
>    THE COURT:   Okay.

MR. LOONEY: – what I've explained to my client is in this document, the government agrees to cap their request at the three point level, but we are free to argue for a lesser figure.

THE COURT: Yes. Yes. And as I said, I don't have to do what the government says. I can go lower or I can go higher. And what I need you to understand is the worst possible scenario.

DEFENDANT BALDERAS: Yes.

THE COURT: The government has also said, and this is a similar kind of thing, that it's going to approach the guidelines by limiting the amount of cocaine that you are held responsible for to 150 kilograms and a base offense level of 36. Okay? Do you understand what the government is saying, that — and that's guideline talk for limiting your exposure to a certain amount. Do you understand that?

DEFENDANT BALDERAS: Yes.

DEFENDANT SANCHEZ: Yes.

THE COURT: Again, same point I made earlier. I don't have to follow what the government does. I can under some circumstances, depending on what the information shows, what the evidence shows, I can go lower, because I think that that's what the evidence supports. If I go lower, your sentence would be reduced if it was a guideline sentence. If I went higher, it would go the other way. Do you understand?

DEFENDANT BALDERAS: Yes.

DEFENDANT SANCHEZ: Yes.

THE COURT: And, again, because what we're talking about is how you figure out the guidelines, you couldn't file an appeal if I stayed within the resulting guideline range. You couldn't file a later challenge. You couldn't withdraw your plea. Do you understand that?

DEFENDANT BALDERAS: Yes.

. . .

>MR. IMPERATO: Judge, just to be clear also, the government is agreeing to a level 36. I want that to be stated on the record as well.
>
>THE COURT: Right. And if I thought that instead it should be a level 38, you would get a heavier sentence and it would still be a guideline sentence, if I stayed within the guidelines. Do you understand that?
>
>DEFENDANT BALDERAS: Yes.
>
>DEFENDANT SANCHEZ: Yes.

(*Id*., pp. 25-28).

Balderas stated that he understood and pleaded guilty to count 1 of the indictment. A presentence report was subsequently prepared that detailed Balderas's involvement in the cocaine-distribution ring. The evidence included numerous intercepted telephone calls between Balderas and other codefendants discussing delivery of 25 kilograms of cocaine; agents observing Balderas and a codefendant receiving 25 kilograms of cocaine; and additional telephone calls revealing payment of $345,000 for the cocaine. The evidence also showed subsequent intercepted telephone conversations between Balderas and other defendants discussing the delivery of 68 kilograms of cocaine, followed by payment of $995,000. Later interceptions of telephone calls and surveillance resulted in the seizure of four kilograms of cocaine intended for delivery to Balderas. On August 20, 2007, Balderas was arrested. He cooperated and admitted involvement in the drug-trafficking organization that had distributed multi-kilogram quantities of cocaine over an extended period.

The parties' plea agreement included the government's representation that it would not oppose a three-level (as opposed to four-level) increase to the offense level based on an aggravating role and would not oppose limiting the drug quantity for relevant-conduct purposes to less than 150 kilograms. The presentence report, however, stated that Balderas should receive a four-level

increase to the offense level, appropriate for a leadership or organizational role in the offense as opposed to a managerial or supervisory role. The presentence report also stated that Balderas should be held responsible for over 150 kilograms. As a result, the offense level was 38 and sentencing range was 262 to 327 months. Balderas's counsel objected to the role in the offense increase, arguing for a two-level instead of a four-level increase, and to holding Balderas accountable for more than 150 kilograms.

At the sentencing hearing, the government consistently argued that the increase to the offense level for role should be a three-level increase, as specified in the parties' plea agreement. The following exchange occurred:

> MR. LOONEY: In this particular instance, Your Honor, the role assumes that Mr. Balderas and Mr. Sanchez were coequals. The evidence doesn't support that. It appears that Mr. Balderas was at least a lesser equal, if not a subordinate. The contacts were not his, the purchase contacts were not his, the sale contacts were not his. All of that came from Mr. Sanchez. And if that alteration in the facts is accepted the role would be two [a]s opposed to a three.
>
> THE COURT: Did you want to respond in any way, or are you restrained by your agreement?
>
> MR. IMPERATO: I think I'm restrained. I just said we believe three is more applicable. That's all I would say. I think the plea agreement precludes me from arguing anything more than that.

(Docket Entry No. 395, p. 4).

The government similarly responded to the argument that the drug amount should be below 150 kilograms, as stated in the plea agreement:

> MR. IMPERATO: We would again, Judge, stand by the plea agreement and believe that 150 kilograms is the amount that the defendant should be sentenced.

(*Id.*, p. 5).

The court overruled the defense objection to the role in the offense because the PSR established that he had an organizational and leadership role. The court was particularly troubled by the argument that Sanchez had a higher or equal role to Balderas. In seeking a two-level as opposed to a four-level increase, counsel for Balderas argued that the sellers and buyers were Sanchez's and that the recruitment of drivers was Sanchez's responsibility. At this point, the government, without arguing for more than a three-level increase, but in response to the defense argument for a two-level increase, stated as follows:

> MR. IMPERATO: Judge, I can't argue anything more than what I've said – stated already, but I just need to correct the facts. The sources, while they may have been Mr. Sanchez', the buyers and transporters, that was under Mr. Balderas' control. His nephew, the calls, they all indicate that he was the one directing Aaron Hurtado who to deliver to, and dealing with the buyers and collecting money from them. So I don't think that that's correct.
>
> MR. LOONEY: That wasn't my argument, Your Honor. They came to the ballpark by invitation of Mr. Sanchez. He did deal with them directly.
>
> THE COURT: What is your view, Mr. Imperato, to the extent you are free to express it, given the constraints of the plea agreement, what is your view as to the relative culpability of Mr. Sanchez and Mr. Balderas?
>
> MR. IMPERATO: I think they're equal.

(*Id.*, pp. 8-9).

The court overruled the defense objections, finding that all the applicable guideline factors weighed in favor of finding Balderas a leader and organizer, making a four-level increase proper. (*Id.*, p. 9).

The court also overruled the defense objection to the drug amount, noting that there was no objection to any of the paragraphs of the PSR that set out the cocaine transactions. The court found

an ample basis in the PSR to hold Balderas responsible for conspiring to distribute more than 150 kilograms of cocaine. (*Id*., p. 7). The court sentenced Balderas to 262 months.

Balderas's appeal to the United States Fifth Circuit Court of Appeals was dismissed for want of prosecution. He timely filed this motion for relief under 28 U.S.C. § 2255. Balderas asserts that at sentencing, the government breached the plea agreement by failing to "stand mute" as to the role Balderas played in the offense. Balderas argues that the waiver in his plea agreement is not effective because he was not advised that he had a right to effective assistance of counsel and that the tainted waiver may have made the guilty plea involuntary. He argues that counsel did not review the PSR with him and told him not to tell the court that he had seen the PSR for the first time the day before sentencing. The record includes the affidavits by defense counsel denying such an instruction to Balderas and explaining that the drug amount in the PSR was not objected to because there was no credible basis for an objection.

The government argues that the record defeats each of Balderas's claims. This court agrees.

**II.    Analysis**

Balderas is proceeding *pro se*. Courts construe *pro se* litigants' pleadings under a less stringent standard than is applied to pleadings filed by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999). Pleadings filed by a *pro se* litigant are liberally construed. *See United States v. Pena,* 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.,* 86 F.3d 469, 472 & n.16 (5th Cir. 1996)).

28 U.S.C. § 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose

> such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"Section 2255 provides the primary means of collateral attack on a federal sentence. Relief under this section is warranted for any error that occurred at or prior to sentencing." *Cox v. Warden, Federal Detention Center,* 911 F.2d 1111, 1113 (5th Cir. 1990) (internal quotations and citations omitted). A section 2255 motion does not require an evidentiary hearing if the motion and the record conclusively show that the prisoner is not entitled to relief. *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir. 1992).

### A.   The Claim of Breach of the Plea Agreement

The party alleging breach bears the burden of proving the underlying facts by a preponderance of evidence. *United States v. Wilder,* 15 F.3d 1292, 1295 (5th Cir. 1994). In determining whether the terms of a plea agreement have been violated, a court must determine "whether the government's conduct is consistent with what is reasonably understood by the defendant when entering a plea of guilty." *United States v. Huddleston,* 929 F.2d 1030, 1032 (5th Cir. 1991). General principles of contract law are used to interpret the terms of a plea agreement. *United States v. Cantu,* 185 F.3d 298, 304 (5th Cir. 1999). The sole measure of performance is the agreement's express terms. *United States v. Cates,* 952 F.2d 149, 153 (5th Cir. 1992).

The record defeats Balderas's argument that the government breached the plea agreement. Instead, the government repeatedly emphasized that it was not making any argument inconsistent with its positions in the plea agreement that Balderas should be held to a three-level increase in the offense level for role in the offense and held responsible for no more than 150 kilograms of cocaine. In response to a specific statement by counsel for Balderas — seeking a two-level rather than a

three- or four-level increase for role — comparing Balderas's culpability to that of his codefendant, Sanchez, the government stated that it could not argue more than the plea agreement allowed, but that the factual statements made by defense counsel needed to be corrected. The court recognized that the government's statement was within, and consistent with, the constraints of the plea agreement. The government did not argue for a role in the offense or an offense level higher than it agreed to in the parties' plea agreement. There was no breach of the plea agreement by the government.

### B. The Claim that the Waiver Is Unenforceable Because There Was Ineffective Assistance of Counsel

The rearraignment transcript shows that the waiver of appeal was explained in detail. Balderas stated in court, under oath, that he understood. A defendant can waive his right to file an appeal or a § 2255 motion, although such a waiver might not apply to an ineffective assistance of counsel claim. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). The record in this case provides ample basis to conclude that the plea and waiver were knowing and voluntary and that the issue challenged on appeal may properly be the subject of waiver. *United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002). Because, as discussed below, there is no basis to find any ineffective assistance of counsel, the guilty plea sustains the conviction and sentence and the waiver is enforceable.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and petitioner suffered prejudice as a result. *Strickland v. Washington,* 466 U.S. 668 (1984); *Martin v. Cain,* 246 F.3d 471, 477 (5th Cir. 2001). The district court may dispose of a claim if counsel either rendered reasonably effective assistance or no prejudice can be shown. A court evaluating a claim of ineffective

assistance need not address the reasonableness component first. If a petitioner fails to make one of the required showings, the court need not address the other. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

As to the prejudice portion of the inquiry, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable." *Id.* at 691.

During the rearraignment, this court fully examined Balderas's satisfaction with his counsel, the absence of any need to ask his counsel more questions or get more advice from him, and that Balderas fully understood the indictment and plea agreement because he and his lawyer had reviewed them in detail. The record shows that the court fully admonished Balderas as to the elements of the offense, the consequences of his plea, the rights he was giving up, the sentence he faced, and the plea agreement — including the waiver of appeal and collateral challenge. Balderas stated that he understood. Balderas admitted to the truth of the factual basis and the allegations in the indictment. The court determined that Balderas was competent to plead guilty; that the record

established all the elements of the offense; and that Balderas's plea was voluntarily, freely, and knowingly made.

A federal court must uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary, and intelligent. *Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir.), *cert. denied,* 474 U.S. 838 (1985); *Henderson v. Morgan,* 426 U.S. 637, 645 n.13 (1976). The critical issue in determining whether a plea was voluntary and intelligent is "whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley,* 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied,* 503 U.S. 988 (1992). If the record shows that the defendant "understood the charge and its consequences," a court will uphold the plea as voluntary. *Davis v. Butler,* 825 F.2d 892, 893 (5th Cir. 1987). The record fully supports finding Balderas's plea to be voluntarily and knowingly made.

Balderas has failed to show that counsel was deficient in advising him as to his rights to effective counsel. In the context of a guilty plea, prejudice is present if there is reasonable probability that absent counsel's errors, the petitioner would not have entered a guilty plea and would have insisted on a trial. *United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir. 1996); *Mangum v. Hargett,* 67 F.3d 80 (5th Cir. 1995), *cert. denied,* 516 U.S. 1133 (1996). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694. Once a guilty plea has been entered, nonjurisdictional defects are waived, including all claims of ineffective assistance of counsel except insofar as the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir.), *cert. denied sub nom. Smith v. McKaskle,* 466 U.S. 906 (1984). When a defendant has pleaded guilty, to satisfy the second prong of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59; *see also Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994). Balderas pleaded guilty after a thorough instruction as to the consequences of his plea and the rights he was giving up by pleading guilty. There is no basis to find a deficient performance or prejudice.

### C. The Claim That Counsel Failed to Review the Presentence Report With Balderas and Failed to Object to the Drug Amounts

The record shows that at sentencing, contrary to Balderas's allegations, defense counsel stated — with Balderas present — that they had reviewed the PSR and the objections and addendum. Balderas said nothing to dispute this statement, although he did address the court in allocution. This is consistent with the affidavit statements of his counsel that are part of this record. There is no basis to support Balderas's allegations that he did not have time to review the PSR before the sentencing or that his lawyer instructed him to mislead the court.

Balderas also alleges that his lawyer failed to present objections to the drug amount during the sentencing. The record shows that defense counsel did present objections to holding Balderas responsible for more than 150 kilograms, which the court considered. The record precludes any argument that counsel was deficient, or that Balderas was prejudiced, as a result of counsel's failure to object on the basis that the drug amounts were not admitted to by Balderas. Such an objection would have been futile. There is no basis to conclude that there is a reasonable probability that had an objection been made, the sentence would have been different. *See United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000); *United States v. Grammas*, 376 F.3d 433, 4388-39 (5th Cir. 2004).

Balderas has failed to present a basis for the relief he seeks.

**III.     Conclusion**

The government's motion for summary judgment, (Docket Entry Nos. 476, 477, 478), is granted. The waiver in the plea agreement is enforceable; there is no basis to find ineffective assistance of counsel or a breach of the plea agreement; and there is no Sixth Amendment violation. Balderas's Motion Under 28 U.S.C. § 2255, (Docket Entry No. 453), is denied. The corresponding civil action is dismissed with prejudice. Balderas's motions for counsel, (Docket Entry Nos. 408), and motions to serve, (Docket Entry No. 469, 470, 471), are moot. The government's motion for extension (Docket Entry No. 457) and Balderas's motion for an extension to file a reply (Docket Entry No. 468), are moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability is "a jurisdictional prerequisite" for an appeal on the merits by a habeas petitioner. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When considering a request for a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id*. at 342. Because Balderas has not made the necessary showing, this court will not issue a certificate of appealability.

Final judgment will issue by separate order.

SIGNED on June 4, 2010, at Houston, Texas.

                                            Lee H. Rosenthal
                                    United States District Judge